IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| | ) | |
| KATHLEEN RIOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:13-cv-1458-CMH-TRJ |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff Kathleen Rios ("Ms. Rios")

seeks judicial review of the final decision of the Commissioner of the Social Security

Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB")

under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-433.  The Administrative

Law Judge ("ALJ") found that plaintiff was not under a disability within the meaning of the SSA

at any time from June 15, 2008, the alleged onset date, through June 30, 2012, the date last

insured.

Plaintiff raises two issues on review: (1) whether the ALJ's credibility assessment was

supported by substantial evidence and the correct application of the law; and (2) whether there is

substantial evidence that plaintiff could perform other work that existed in significant quantity in

the national economy.

This action has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. §

636 (b)(1)(B),  Fed. R. Civ. Pro. 72(b), and Local Civil Rule 72.  The parties have filed cross-

motions for summary judgment.  Having carefully reviewed the parties' briefs and the

administrative record, the magistrate judge finds that the ALJ's determination that plaintiff was

not disabled within the meaning of the SSA is not supported by substantial evidence, and that

remand for further consideration would not serve any purpose.  The magistrate judge therefore

recommends that plaintiff's motion for summary judgment (no. 8) be GRANTED, that the

Commissioner's motion (no. 12) be DENIED, and that the Commissioner be directed to award

benefits.

## I.  PROCEDURAL BACKGROUND

Kathleen Rios filed an application for disability benefits under Title II of the Social

Security Act on September 17, 2010.  R. at 177-80.[1]  The state agency denied plaintiff's

application initially on December 28, 2010, and denied reconsideration on June 23, 2011.  R. at

19, 118, 125-26, 177, 192.  A hearing before the Administrative Law Judge ("ALJ") was held on

July 6, 2013, in which plaintiff and an impartial vocational expert testified.  R. at 37-83.  The

ALJ denied her claim on July 19, 2012.  R. at 14-36.  The Appeals Council denied plaintiff's

request for review on October 11, 2013, thereby making the ALJ's decision the final decision of

the Commissioner.  R. at 1-6.

## II.  STANDARD OF REVIEW

Under the Social Security Act, the court's review of the Commissioner's final decision is

limited to determining whether the Commissioner's decision was supported by substantial

evidence in the record and whether the correct legal standard was applied in evaluating the

evidence.  42 U.S.C. § 405(g); *see Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  As the Fourth Circuit has stated,

---

[1]  "R." refers to the certified administrative record that was filed under seal on March 12, 2014, pursuant to Local Rule Civil Rules 5(B) and 7(C)(1).

substantial evidence is "evidence which a reasonable mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Hays*, 907 F.2d at 1453 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In determining whether the Commissioner's decision is supported by substantial evidence, the court must examine the record as a whole.  The court may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."  *Maestro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)).  If the ALJ made specific credibility determinations, supported by a discussion of specific evidence and an evaluation of plaintiff's testimony, then the ALJ's credibility findings receive great weight.  *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  If the ALJ's findings as to any fact are supported by substantial evidence, they are conclusive and must be affirmed.  *Perales*, 402 U.S. at 390.  Furthermore, the ALJ as the trier of fact is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine claimant's residual functional capacity.  *Hays*, 907 F.2d at 1456-57.  Overall, if the ALJ's findings and resolution of conflicts in the evidence are supported by substantial evidence, the court is to affirm the Commissioner's final decision.  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

## III.  RELEVANT FACTUAL BACKGROUND

Kathleen Rios, a teacher and teacher's aide with a high school education, was forty-two (42) years old on June 15, 2008, her alleged onset date.  R. at 177.

Plaintiff has an extensive medical history that includes various medical conditions including degenerative disc disease, chronic obstructive pulmonary disease, neck, wrist, and

3

shoulder pain, and left shoulder and knee arthropathy.  R. at 87-88.  Her medical record primarily

centers on her musculoskeletal ailments and pain symptoms.  Throughout the relevant period,

plaintiff has undergone several different medical procedures including surgeries and injections as

well as other more conservative methods of treatment including physical therapy and medication

to treat chronic pain.  In several medical reports plaintiff reported high levels of pain up to 10/10

in severity.  R. at 24, 301, 404.  Also, plaintiff has mental health conditions including bipolar

disorder, depression, and anxiety which are treated by medication and are not in dispute in this

case.  R. at 47, 54, 872.

Plaintiff testified that she suffered from multiple physical and mental impairments

including pain, stress, and breathing problems that severely limited her ability to drive, sit, walk,

do chores, stand, lift items, shower, and be around large crowds.  R. at 43, 53, 60-63, 220.  On

October 24, 2010, on her Adult Function Report, she noted that she had constant and throbbing

pain that limited her ability to bend, stoop and reach.  R. at 212- 220.  Plaintiff testified that she

lies down at least four times per days and naps for 1-1.5 hours.

Since 2008, plaintiff has experienced ongoing knee discomfort for which she underwent a

course of physical therapy.  R. at 307.  In May 2009, she underwent an arthroscopy surgery of

her left knee to repair her torn meniscus.  R. at 456.  Dr. Carlini noted that plaintiff would likely

need a "total knee replacement during her lifetime" and six weeks post-op, increased her pain

medication and encouraged her to wear a brace.  R. at 457.  On November 17, 2009, plaintiff

underwent an MRI of her right knee which revealed a small joint effusion and areas of mild

chondromalacia.  R. at 397.  On June 3, 2012, plaintiff went to the emergency room due to left

knee pain.  R. at 1276.

Ms. Rios has also sought extensive medical treatment for persistent neck and shoulder pain including physical therapy, surgery, and injections.  R. at 274.  On April 30, 2009, she underwent an MRI of her left shoulder which revealed tendinopathy, joint arthritis, and a suspected low-grade thickness tear.  R. at  392.   In June 2009, Dr. Carlini performed arthroscopic surgery on her left shoulder to repair a labral tear which resulted in some improved strength and motion.  R. at 443.  Plaintiff continued to experience intense shoulder, back and neck pain.  In 2010 and 2011, Dr. Hung diagnosed her with a cervical disc displacement.  R. at 706-10, 936.  In February and March 2011, Ms. Rios underwent multiple epidural steroid injections ("ESI"), facet block injections, and stimulation therapy in the cervical, thoracic and lumbar regions.  R. at 702, 719, 736, 754, 1101, 1267.  On August 22, 2011, she underwent a left-sided cervical facet rhizotomy with radiofrequency ablation to treat her pain.  R. at 985.

Plaintiff has been diagnosed with chronic obstructive pulmonary diseases (COPD) including asthma and chronic bronchitis.   R. at 222, 483, 485, 522, 535-37, 872, 1010, 1022, 1269.  In August 2010, her doctor found that her pulmonary symptoms were stable and fairly controlled.  R. at 522-24, 527-29.  On June 3, 2012, Dr. Smirniotopoulos, plaintiff's treating pulmonary physician, noted that her ongoing asthma attacks would likely cause her to be absent from work more than three times per month.  R. at 1226-27.

In February 2010 and October 2011, plaintiff was diagnosed with mild degenerative disc disease, C5-6 disc space narrowing, and a small central disc protrusion at C6-7.  R. at 418-22, 1073.  Plaintiff's treating doctor did not recommend surgery but advised her to manage her symptoms with physical therapy, pain management, and cervical injections.  R. at 422.  In December 2010, Dr. Carlini reported that plaintiff's lumbar MRI showed two-level facet disease

at L4-5 and L5-S1, causing radiculopathy and recommended sequential facet injections. R. at 587-88.

Plaintiff also has a history of persistent wrist pain and was diagnosed with tenosynovitis of the hand and wrist. R. at 811, 915, 932. In August 2011, plaintiff had an arthroscopy surgery on her right wrist followed by injection treatments. R. at 1088. By October 2011, Dr. Jander reported that plaintiff had full range of motion of her right wrist with some discomfort. R. at 1083.

On January 3, 2012, Dr. Hernandez saw plaintiff for a physical examination. At the examination, plaintiff denied any shortness of breath, chest pain, and back pain. R. at 1218-20. The examination revealed that plaintiff's bilateral upper extremities and respiratory were normal. R. at 1219. However a month later, plaintiff complained of left shoulder, neck and left knee pain. R. at 1232-33. In a 2012 report, Dr. Raley found that plaintiff appeared not to be in acute distress and could walk without any difficulty although she had knee pain. R. at 1261-62. However on her 2010 disability parking application, Dr. Schultz certified that plaintiff was severely limited in her ability to walk due to an arthritic, neurological, or orthopedic condition. R. at 479-81. In 2012 reports, Ms. Biagas, PA noted that plaintiff had full range of motion in her shoulders, elbows, wrist, ankles and knees but also noted that she had painful cervical motions and neck and back pain for which she was given a back brace. R. at 1255-1267. However during the months leading up to her last insured date in June 2012, plaintiff continued to complain to her doctors about aggravating and acute pain in her knee, neck, and shoulder. R. at 1276, 1281.

At the July 6, 2012, hearing, plaintiff testified that she last worked full time in June 2008 as a pre-school teacher and had a high school education. R. at 46-47. After her alleged onset

date, plaintiff operated a small part-time airbrushing business, apparently in her home, through August 2010.  R. at 44-45.

She testified that she lived with her 16-year-old daughter who she heavily relied on to help with household chores.  R. at 61-63, 217-18.  Moreover, plaintiff reported that she occasionally drove, watched TV, and went out to dinner with friends.  R. at 215-20.  Plaintiff, who is right handed, indicated that because of her right wrist injury she was able to perform household chores only at a slow pace and with constant breaks due to pain.  R. at 79, 219.  Also, plaintiff testified that she could walk for no more than 45 minutes at a time before stopping for a 15-20 minute break, could stand for no more than 30 minutes, and could sit only for short periods of time.  R. at 59-62.

## IV.  ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

In every Social Security disability claim analysis, the ALJ is first required to determine whether the claimant met the insured status requirement.[2]  The ALJ then conducts the familiar five-step sequential evaluation to determine if the claimant is disabled and therefore eligible for disability insurance benefits.  20 C.F.R. § 416.920(a).  It is this five-step process that the court examines on appeal to determine whether the correct legal standard was applied and whether the resulting decision was supported by substantial evidence in the record.  20 C.F.R. §§ 404.1520, 416.920.

The ALJ made the following findings of fact and conclusions of law.  First, plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of June 15, 2008, through her date last insured of June 30, 2012.  R. at 19.  Second, Ms. Rios had several

---

[2]  *See* 42 U.S.C. § 423(a).  To qualify for disability insurance benefits, plaintiff must prove that she became disabled prior to the expiration of her insured status.  42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.101(a).  The ALJ found that plaintiff met the last date insured requirements of the SSA on June 30, 2012.  R. at 19.

severe impairments: degenerative disc disease of the cervical spine, chronic obstructive

pulmonary diseases ("COPD"), history of left shoulder arthropathy, history of left knee

arthroscopic surgery, mood disorder with complaints of depression and anxiety.  R. at 19.  Third,

she did not have a severe impairment or combination of impairments meeting or medically

equaling one of the listed impairments in 20 C.F.R. Part 404.  R. at 20.

Fourth, plaintiff through the date last insured was unable to perform any past relevant

work.  R. at 28.  However, the ALJ found that, through the date last insured, plaintiff could

perform a small subset of "light" work.  He found that she

> had the residual functional capacity to perform light work as defined in 20 C.F.R.
> § 404.1567(b) except the claimant is further limited to work with no more than
> occasional climbing, balancing, stooping, kneeling, crouching, and crawling. She
> is limited to no more than occasional reaching with her left upper extremity in the
> front, laterally and overhead.  Additionally, she is limited to jobs that avoid
> concentrated exposure to odors, dusts, gases, fumes and poor ventilation.  She
> must avoid workplace hazards such as unprotected heights and dangerous or
> moving machinery.  Mentally, the claimant is limited to simple, routine tasks
> where she does not have to interact with the public or co-workers on more than an
> occasional and superficial basis.

R. at 22.

Fifth, considering plaintiff's age, education, work experience, and residual functional

capacity, the ALJ determined that there were jobs that existed in significant numbers in the

national economy that claimant could perform, even though the vocational expert identified only

one isolated job that plaintiff could perform based on the RFC.  R. at 29.

The ALJ therefore concluded that Ms. Rios was not "disabled" within the meaning of the

SSA at any time from June 15, 2008, through June 30, 2012—the alleged onset date through the

date last insured.  R. at 30.

# V.  ANALYSIS

Ms. Rios raises two issues on judicial review.  The first issue is whether the ALJ's credibility assessment is erroneous as a matter of law and not supported by substantial evidence. The second is whether the ALJ's conclusion that plaintiff could perform other work that existed in significant quantity in the national economy was based on a proper application of the law and supported by substantial evidence.

## A)   THE ALJ'S CREDIBILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Specifically, plaintiff contends that the ALJ overestimated her capacity to perform daily activities and underestimated the severity of her medical history and condition.  The government argues that the ALJ properly conducted a two-step analysis of plaintiff's credibility and that the ALJ's credibility finding was supported by substantial evidence.  Based on a review of the record, the magistrate judge finds that although the ALJ followed the proper two-step analysis, the reasons provided in support of his credibility assessment are not supported by substantial evidence.

It is well-established by SSA regulations and Fourth Circuit precedent that the ALJ in evaluating a claimant's subjective complaints must engage in a two-step process.  *See* 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 594 (4th. Cir. 1996); *Hunter v. Sullivan*, 993, F.2d 31, 36 (4th Cir. 1992); *Mickles v. Shalala*, 29 F.3d 918, 919-20 (4th Cir. 1994); *Little v. Colvin*, 2013 WL 2489173 at *3 (E.D. Va. June 7, 2013).  First, the ALJ must determine whether a claimant has a medically-determinable impairment that could reasonably cause claimant's alleged pain and symptoms.  *Id.*  Second, if the ALJ finds the underlying medical impairment could reasonably cause the claimant's symptoms, he must then evaluate the claimant's statements regarding the intensity, persistence, and limiting effects of the her symptoms to determine the

extent to which the symptoms limit her ability to work in light of the entire record. *Craig*, 76 F.3d at 585; SSR 96-7p; 20 CFR §§ 404.1529(c)(4), 416.929(c)(4).  If a claimant has provided the requisite medical evidence to support a finding that the underlying medical impairment could reasonably cause the claimant's symptoms, the claimant is entitled to rely solely on subjective evidence of pain in the second step.  *Hines*, 453 F.3d at 565.

However, if the ALJ finds in the second step that the claimant's statements are not supported by objective medical evidence, the ALJ must make a credibility determination with regard to the claimant's subjective statements based on the entire record.  SSR 96–7p.  In *Craig*, the court explained that "although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent that they are inconsistent with the available evidence, including objective evidence of the underlying impairment."  76 F.3d at 595.

In determining plaintiff's credibility and the severity of plaintiff's limitations, the ALJ should consider factors such as the individual's daily activities, the dosage, effectiveness, and side effects of medication, and any other measures that the individual uses to relieve pain or symptoms.  SSR 96-7p.   Overall, the ALJ shall consider the objective medical evidence to aid in "making reasonable conclusions about the intensity and persistence" of the claimant's symptoms, and the "effect those symptoms, such as pain, may have on a [claimant's] ability to work."  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  This determination must include "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96–7p.

After reviewing the decision and the entire record, the magistrate judge finds that the ALJ's primary asserted reasons for finding that Ms. Rios' subjective claims were not fully credible are not supported by substantial evidence.  The specific reasons he provided are either inconsistent with the medical record or substantially support plaintiff's credibility rather than undermining it.

In applying the two-step process, the ALJ first found that plaintiff had medically determinable impairments that could reasonably be expected to produce the symptoms alleged. R. at 24.  Here, the primary symptoms that plaintiff complained of are chronic and constant pain in her neck, spine, left shoulder, left knee, chest and head.  R. at 23.  The ALJ found that "her neck and shoulder pain is sharp, throbbing, stabbing, exacerbated by movement, and the most severe symptom she suffers." Id.  Additional symptoms included "limited mobility, side effects of medication, and mental impairment symptoms." R. at 23.

The ALJ identified several medical impairments that could reasonably be expected to cause her pain, specifically her musculoskeletal and physical irregularities.  R. at 22-24.  These impairments included disc degenerative disease, joint arthritis, tendinopathy, and left knee and right wrist irregularities. Id.

At step two, the ALJ cited to objective medical evidence that he contended undermined plaintiff's credibility regarding the severity of her limitations and subjective complaints. Specifically, the ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment."  R. at 24.  The ALJ's three main reasons why plaintiff's statements were not fully credible were that they were not supported by the "[1] longitudinal conservative treatment record, [2] the documented objective findings, and [3] Ms.

11

Rios' stated ongoing capabilities." R. at 27. A closer review of the record reveals that the three main reasons that the ALJ provided do not constitute substantial evidence in support of his credibility finding, and that the ALJ to a certain extent mischaracterized plaintiff's medical record and stated capabilities.

    a) *Longitudinal Conservative Treatment*

Plaintiff persuasively argues that the ALJ improperly mischaracterized her longitudinal medical treatment as "conservative," and that such a characterization may not properly be used as a gauge of her credibility.

When assessing a plaintiff's longitudinal medical record, SSR 96-7p explains that the ALJ should consider the effectiveness of any medication or treatment the individual receives, other factors that aggravate or ameliorate plaintiff's symptoms, and plaintiff's attempts to seek medical treatment . . . and follow that treatment once it is prescribed." SSR 96-7p provides additional guidance on an ALJ's consideration of longitudinal treatment history:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, . . . may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

The magistrate judge finds that plaintiff's longitudinal treatment record is reasonably consistent with plaintiff's claim of severe pain and symptoms and finds that the ALJ's rationale on this issue is not supported by substantial evidence. The ALJ asserted that plaintiff's statements regarding the severity of her limitations are not entirely credible "because they are not supported by the longitudinal conservative treatment." R. at 27. The record and the decision clearly demonstrate that plaintiff's medical treatment was far from being "conservative" or

modest. The record documents plaintiff's extensive medical history which included that the "claimant underwent several arthroscopic procedures including shoulder repair, knee surgery, and cervical rhizotomy" and "extensive epidural injections that provided transient relief of her symptoms." R. at 27. The ALJ further commented on plaintiff's persistent effort to pursue various medical treatments to relieve her pain. For example, the ALJ discussed how she underwent 28 epidural injections, stimulation therapy, and took pain medication without experiencing significant and enduring relief. R. at 23. In 2010, Dr. Shridharani performed musculoskeletal testing on plaintiff which revealed mild pain in her shoulder and degenerative changes in her spine for which he recommended further cervical injections and pain management. R. at 422. Overall, the medical record reveals that plaintiff's treatment history is consistent with the nature and degree of pain she alleged.

In support of his credibility finding the ALJ notes that despite these procedures, the "record reflects that Ms. Rios recovered (sic) from these procedures without incident." R. at 27. The ALJ further cited to medical records showing that plaintiff's physicians noted improved shoulder and wrist conditions after surgeries. The ALJ discussed other objective physical examinations from 2010-2012 that document that plaintiff had a normal gait and station, full or normal strength of her upper and lower extremities bilaterally, no evidence of acute musculoskeletal irregularities, and had extremity and neurological examinations which were within normal limits. R. at 22-27,416-19, 440, 456, 587-88, 706-10, 811, 932, 944, 1218-20, 1255-67.

However, despite these references to the medical evidence, the record when taken as a whole demonstrates that contrary to the ALJ's opinion, plaintiff *did not* "recover from these

procedures without incident" but continued to experience chronic pain, limited mobility, and further complications consistent with her subjective complaints.

For example, plaintiff sought many treatments that were ultimately ineffective and provided little relief.  In 2009 and 2011, plaintiff had to undergo right wrist surgery and left knee surgery after doctors noted "failing conservative treatment" and "persistent symptoms."  R. at 795, 1088.  In 2011-2012 reports by Dr. Raley, Dr. Hung, and Dr. Mitgang, her doctors documented that plaintiff had chronic pain and commented that her dorsal column spinal cord (DCS) stimulation trial failed and the epidural injections and physical therapy provided either no improvement or temporary relief.  R. at 706-08, 810, 1114, 1228-29, 1282.  In several of Dr. Hernandez's 2012 reports, he discussed plaintiff's chest and neck pain.  R. at 1288-96.  Even in the medical reports where her doctors indicated improvements in strength and motion after her procedures, many of them noted plaintiff's residual and severe pain.  R. at 307, 407, 416, 430, 440, 1083-86.  For example, despite surgery on her left knee in 2009, plaintiff went to the emergency room with complaints of acute left knee pain in June 2012.  R. at 1276. Overall, the magistrate judge finds that the ALJ's conclusion that Ms. Rios was not entirely credible on this basis is not supported by substantial evidence.

b)  *Objective Medical Findings*

The ALJ stated that the documented objective findings discount Ms. Rios' credibility.  As extensively discussed above, the magistrate judge finds that the objective medical evidence cited by the ALJ do not significantly undermine plaintiff's credibility in regards to the intensity and persistence of her subjective complaints.  In the decision, many of the ALJ's findings regarding plaintiff's medical impairments and medical history are reasonably consistent with her subjective complaints about her pain and other symptoms.  Here, plaintiff at step one has not only

demonstrated that she has medical impairments that could reasonably be expected to produce

pain but the ALJ also cited to record medical evidence that plaintiff indeed had pain and sought

out extensive treatment for pain as well as other symptoms.

Moreover, the record reflects that the Commissioner's physicians who reviewed

plaintiff's files determined that Ms. Rios had medically determinable impairments that caused

her pain and generally reported that her alleged symptoms were "genuine" and "fully credible."

R. at 90, 108.  Here, the magistrate judge finds that although the ALJ provides a lengthy

discussion of plaintiff's medical record, the ALJ does not sufficiently explain how the objective

findings affirmatively detract from plaintiff's credibility.  Accordingly, the magistrate judge

finds that the ALJ's rationale that the objective medical findings do not support Ms. Rios's

subjective complaints of her symptoms is not supported by substantial evidence.

c) *Plaintiff's Ongoing Capabilities*

Plaintiff also contends that her stated activities as recounted by the ALJ do not constitute

substantial evidence in support of the ALJ's credibility finding and do not support the ALJ's

finding that plaintiff could perform the demands of light work on a consistent and full time basis.

The magistrate judge agrees.  In the decision, the ALJ found that

> [i]n activities of daily living, the claimant had no more than mild restrictions from
> her physical and mental irregularities, the record reflects that Ms. Rios retains the
> capacity to take care of her personal needs, prepare meals on a daily basis, clean,
> wash laundry, iron, drive, shop for groceries, vacuum when she is able, load the
> dishwasher, handle her finances, watch television, go to dinner with friends,
> attend church at least once per month, and use a computer, albeit at a slower pace
> and with the assistance of her daughter.

R. at 21, 216-20.  The ALJ also discusses how the plaintiff testified that she operated a small

airbrushing business until 2010.  R. at 23.  Moreover, the ALJ acknowledged her subjective

complaints by stating that "she suffers from bad days where her symptoms are exacerbated four

out of seven days per week" and she "experiences shortness of breath with cleaning" and walking down the stairs.  R. at 23.

Contrary to the ALJ's description, the magistrate judge finds that plaintiff's stated daily activities are largely consistent with her subjective complaints about her symptoms, her documented physical impairments and the objective medical findings.  A close reading of plaintiff's testimony and stated activities demonstrate that plaintiff is significantly limited in her ability to perform daily activities and some of the exertional requirements of light work.  When put in proper context, plaintiff performs the listed activities at a much slower pace and with significant assistance from her daughter which support her credibility as to her subjective complaints of pain.  R. at 217-18.  Plaintiff testified that in the instances where she does do chores, she has to take constant breaks due to pain and symptoms from pain medications.  R. at 79, 217-19.  In her 2010 Function Report, she further explained that many of these chores take a few days to complete.  R. at 217.  As for her previous airbrushing "business," her testimony and record evidence indicates that the part-time business generated minimal income and involved very sporadic work.  It inherently requires minimal physical effort.

The ALJ used plaintiff's capability to support his finding that plaintiff is able to perform light work.  The ability to work at the light exertional level primarily requires a "good deal of walking and standing." 20 C.F.R. § 404.1567(b).  Within the category of light work, "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10p.  Here, plaintiff testified that she could walk for no more than 45 minutes at a time before stopping for a 15-20 minute break, could stand for no more than 30 minutes, and could sit only for short periods of time.  R. at 59-62.

Many of the activities listed by the ALJ like going to church and watching TV do not require significant walking or standing.  For the activities that presumably require standing like vacuuming and shopping for groceries, the magistrate judge finds that they do not undermine the frequency and severity of plaintiff's subjective complaints in light of her testimony that she has to take constant breaks and get assistance.

Many courts have found that a plaintiff's ability to perform such similar household tasks is not telling of plaintiff's functional abilities and is insufficient to undermine plaintiff's subjective complaints because of their intermittent nature and the fact that many of these tasks do not require the sustained effort necessary for substantial work.  *Waters v. Bowen*, 709 F. Supp. 278, 284 (D. Mass. 1989) (explaining that such "sporadic and transitory activities may demonstrate not her ability but rather her inability to engage in substantial gainful activity." (quoting *Wilson v. Richardson*, 455 F.2d 304, 307 (4th Cir. 1972); *Fulwood v. Heckler*, 594 F. Supp. 540, 543 (D.D.C. 1984) (claimant could shop, cook, occasionally drive, visit relatives, serve as a church deacon, wash dishes, and sweep floors); *Edwards v. Astrue*, 2011 WL 1480387 (W.D. Va.).  Overall, the magistrate judge finds that the ongoing capabilities recounted by the ALJ do not sufficiently undermine plaintiff's credibility and do not militate against a finding of disability.

Furthermore, plaintiff's stated capabilities along with the objective medical evidence strongly indicate that plaintiff is unable to perform all the exertional limitations of light work especially in regards to standing and walking.  As discussed above, plaintiff has had an extensive history of complications with her knee including a knee surgery, multiple physical therapy sessions and an emergency visit to the hospital due to acute knee pain.  It is well documented by the medical record that she has arthritis in her knees.  R. at 201, 307, 456, 1276.  After plaintiff's

knee surgery, plaintiff had to wear a knee brace at all times and her doctor stated that it was

likely that she would eventually need a total knee replacement.  R. at 232, 440, 457, 506, 1462.

Also, plaintiff had complications with her right knee.  R. at 397.  In November 2009, an MRI

revealed a small joint effusion and right knee pain. *Id*.  Moreover, in 2012, plaintiff was given a

back brace due to painful cervical motions and back pain.  R. at 1255-67.  Accordingly, the

ALJ's conclusion that Ms. Rios was not credible or that she retained the ability to perform the

physical demands of light work particularly in regards to standing and walking on a full time

basis is not supported by substantial evidence.

In conclusion, the magistrate judge finds that the ALJ's credibility finding that plaintiff

was not fully credible was not supported by substantial evidence because the reasons he offered

were not fully substantiated by the evidence and did not reasonably undermine her credibility in

light of the record evidence.

**B)      THE ALJ'S FINDING THAT PLAINTIFF COULD PERFORM WORK THAT
         EXISTED IN THE NATIONAL ECONOMY WAS ERRONEOUS AND NOT
         SUPPORTED BY SUBSTANTIAL EVIDENCE**

Second, plaintiff argues that the ALJ's finding that she was able to perform work in the

national economy, which was based primarily on vocational expert testimony, is not supported

by substantial evidence.  Plaintiff also contends that the ALJ failed to identify a conflict between

the information provided by the vocational expert and the U.S. Department of Labor's

*Dictionary of Occupational Titles*.  For the reasons below, the magistrate judge finds that the

ALJ's finding that plaintiff could perform other work that existed in significant numbers in the

national economy was not supported by substantial evidence and was erroneous as a matter of

law.

Under the well-established five step sequential analysis, the Social Security Act places the initial burden of proof on the claimant to show that, because of his impairments, he is unable to perform his previous work.  Once this prima facie showing of disability has been made by the claimant, then the burden shifts to the Commissioner.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir.1980).

At the final step of the sequential analysis, the ALJ  relied upon vocational expert ("VE") testimony in determining that there were jobs that existed in significant numbers in the national economy that the claimant could have performed in accordance with 20 C.F.R. § 404.1569, and hence was not disabled.  In the decision, the ALJ incorporated the VE's testimony in response to the first hypothetical question he posed.  R. at 29.  The ALJ's first hypothetical contained the same exertional and non-exertional limitations as his residual functional capacity finding.  R. at 78-79.  Specifically, the ALJ asked the vocational expert whether a hypothetical individual of this claimant's age, education, and past work experience could perform any of the claimant's past jobs or any other work based on the following work limitations:

> . . . this individual could perform light work on an exertional basis. But would have the following non-exertional limitations as well.  She could occasionally climb ladders, ropes and scaffolds, as well as ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. She would be limited in reaching to occasionally with her left upper extremity, that's reaching in front, laterally or overhead.  She would need to avoid concentrated exposure to odors, dust, gases, fumes, and poor ventilation, and would need to avoid hazards such as unprotected height and dangerous or moving machinery. She would be limited to performing simple, routine tasks where she did not have to interact with the public or co-workers on more than an occasional and superficial basis.

R. at 78-79.

In response to this hypothetical, the vocational expert testified that the hypothetical individual could not perform any of plaintiff's past jobs.  R. at 79.  When asked whether the

hypothetical individual could "perform any other work and if so, . . . give me a few examples

with the number of jobs for each occupation?," the vocational expert responded:[3]

> Sedentary exertional level, unskilled labor as a production inspector grader, SVP
> 2, DOT 529.666-010. There are approximately 38,000 in the national economy
> and 720 in the Virginia state economy. That would be the *only* occupation I could
> identify, Your Honor, with the limitations on public contact and reaching.

R. at 79.

In the decision, the ALJ relied on the vocational expert's response to the first

hypothetical question which was the only hypothetical question that incorporated all the

limitations identified in the ALJ's residual functional capacity assessment. R. at 29. At step four

and step five of the sequential analysis, the ALJ explicitly referenced that the "vocational expert

testified that given all these factors the individual would have been able to perform the

requirements of *representative occupations* such as production inspector grader." R. at 29

(emphasis added). Although the ALJ used the phrase "representative occupations," the

vocational expert testified that the job of a production inspector grader was the "only" job within

the ALJ's hypothetical parameters and the ALJ failed to provide any other jobs that he found

were representative. Furthermore, the ALJ stated that pursuant to SSR 00-4p, he "determined

that the vocational expert's testimony is consistent with the information contained in the

Dictionary of Occupational Titles." R. at 29; 20 C.F.R. § 404.1569.

---

[3] The ALJ proceeded to ask the vocational expert two other hypothetical questions. The second
hypothetical question incorporated the limitations in the first hypothetical question except that the
limitations regarding reaching and the public contact were not included and the individual would be
limited to sedentary work and would require a sit/stand at will option. R. at 79, 80. The vocational expert
responded that the individual would be employable with a "sit stand option at sedentary, unskilled
information clerk, DOT 237.367-014, SVP 2." R. at 80. The third hypothetical incorporated the
limitations described in the second hypothetical but that this individual "would be off task approximately
20 percent of the workday exclusive of normal breaks due to her symptoms." R. at 80. In response, the
vocational expert testified that the individual could not perform any other work. R. at 81.

Based on a review of the record, the vocational expert testimony and the applicable law, the magistrate judge finds that the ALJ's finding that plaintiff could perform work that existed in significant numbers in the national economy is flawed and not supported by substantial evidence for multiple reasons.  Pursuant to the applicable law, at the fifth and last step, the ALJ must consider the residual functional capacity assessment and claimant's age, education, and work experience to determine if the claimant can make an adjustment "to any other kind of substantial gainful work which exists in the national economy." 20 C.F.R. § 404.1520; 42 U.S.C. § 423(d)(2)(A).  The applicable regulations clarify that "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.966.  If the plaintiff cannot make an adjustment to other work, then the claimant would be found to be disabled.  *Id.*

At the fifth step, the ALJ may rely on vocational expert testimony to determine whether the claimant can perform jobs that exists in the national economy.  SSR 00-4p. Ordinarily, when non-exertional limitations are found as here, vocational testimony is used.  *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir.1975); *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989).  Under Fourth Circuit precedent, the vocational expert testimony should be accepted if based on a consideration of all of the evidence in the record.  *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  Moreover, the vocational expert testimony should be in response to a hypothetical question that fairly sets out all the claimant's impairments that are well-supported by record.  *See Walker v. Bowen*, 889 F.2d at 50; *Young v. Astrue*, 771 F. Supp. 2d 610, 623 (S.D.W. Va. 2011); *Morgan v. Barnhart*, 142 F. App'x 716, 721 (4th Cir. 2005).

Specifically SSR 00-4p explains that the ALJ before relying on vocational expert testimony to support a disability determination or decision must "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by the VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor," and "explain in the determination of decision how any conflict that has been identified was resolved." *See* 2000 SSR LEXIS 8.

First, the magistrate judge finds that the ALJ failed to properly apply SSR 00-4p which governs the use of vocational expert evidence.  The magistrate judge finds that there is a clear conflict between the vocational expert testimony and the DOT and SCO regulations.  In brief, the record demonstrates that the *only* job identified by the vocational expert testimony based on the proposed RFC is inconsistent with the plaintiff's actual residual functional capacity assessment and the information contained in the DOT and SCO.  In light of these apparent conflicts, ALJ failed to reconcile these conflicts pursuant to the applicable regulations.

In applying the limitations contained in the ALJ's residual functional capacity assessment, the vocational expert could only identify one job that such an individual could perform with that RFC which was as an "inspector/grader" of DOT #529.666-010.  This job is defined as the following:

CODE: 529.666-010- Title: Catcher, Filter Tip (tobacco) alternate titles: catcher plug

Off bears and examines cigarette filter plugs (tips) discharged from cigarette filter-making machine: Picks up double handful of plugs and examines them for defects in cutting, gluing, size, and filling. Inspects both ends of the plug and places plugs in tray. Removes defective plugs from tray. Notifies Cigarette-Filter-Making-Machine Operator (tobacco) of defective product.

GOE:06.04.15  STRENGTH: L GED: R2 M2 L2 SVP: 2 DLU:77 (emphasis added).

Based on a reading of this job description, it is readily apparent that the job identified by the VE is inconsistent with plaintiff's RFC and the DOT in several respects.  First, the text of the job description suggests that a person performing this job would be reaching constantly with both hands.  This is contrary to plaintiff's RFC which limited her to "reaching *occasionally* with her left upper extremity, that's reaching in front, laterally, and overhead."  R. at 22, 78.  According to the DOT description, the job would require "frequent" and "constant" reaching, handling, and fingering requirements.[4]  DOT Part A 06.04, Elemental Work: Industrial Chart; Pl. Mem. Ex. B.

The government notes that plaintiff is right handed and her RFC restriction is limited to her left and non-dominant arm.  The government further explains that the DOT lists the maximum requirements of the production inspector grader position and does not address whether an individual who can perform only with a limited non-dominant upper extremity can still perform the job of a production inspector.  Even though the job description does not specifically address this, the description of "picks up double handful of plugs and examines them for defects" clearly indicates the use of both hands.  Pursuant to 20 C.F.R. § 404.1566, "work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which the [claimant] is able to meet with [her] physical or mental abilities and

---

[4]  The ALJ did not list any limitations to plaintiff's ability to perform handling and fingering tasks in his RFC.  R. at 22.

vocational qualifications."  Accordingly, the exertional requirements of the job are beyond the functional and physical limitations of her RFC.

Second, the work environment for which the job of product inspector would likely be performed is also inconsistent with those explicit environmental limitations contained in the RFC.  Based on the RFC, plaintiff would be limited to jobs that "avoid concentrated exposure to odors, dusts, gases, fumes and poor ventilation.  She must avoid workplace hazards such as unprotected heights and dangerous or moving machinery."  R. at 22.  Based on the DOT job description, a production inspector grader would be performing in an industrial and factory environment where he or she would be likely exposed to odors, dusts, and moving machinery.[5] This type of work environment is in direct conflict with the RFC.  The DOT description of this job indicates that the person performing the job would be working in close proximity to a conveyor belt or other moving machinery.  DOT #529.666-0.10.  Also, the record evidence of plaintiff's well-documented symptoms including respiratory problems, COPD, and asthma would also likely significantly limit Ms. Rios's ability to perform all the tasks required for this job.

Based on the RFC, the magistrate judge finds that there is a conflict between the vocational expert testimony and DOT description.  Pursuant to SSR 00-4p,

> [w]hen a VE provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE evidence and information provided in the DOT and obtain a reasonable explanation for the apparent conflict. When vocational evidence provided by a VE is not consistent with the information in the DOT, the adjudicator must resolve this conflict before relying on the VE evidence to support a determination or decision that the individual is or is not disabled.

---

[5]  Selected Characteristics of Occupations (SCO), Appx. A. *Using Selected Characteristics for Occupational Exploration*, at pg.4, http://ssaconnect.com/tfiles/SCO-Appendicies.pdf (last visited August 6, 2014).

The ALJ failed to reconcile these conflicts in accordance with the governing law.

The fact that the vocational expert identified only one job is not by itself determinative of this issue.  Many circuits including the Fourth Circuit have not clearly established the minimum number of jobs necessary to constitute a "significant number" and some have found that a minimal number of jobs, including from one occupation, constitute a significant number at step five.  *Farnsworth v. Astrue*, 604 F. Supp. 2d 828, 859 (N.D.W. Va. 2009) (explaining that the issue before the Court was "whether there is at least one suitable occupation representing a significant number of jobs in the economy"); *Barker v. Secy of Health & Human Servs.*, 882 F.2d 1474, 1478 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986) (upholding the ALJ's finding that 3,750 to 4,250 jobs were a significant number); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988) (finding 1,350 jobs in the local economy significant).  However in interpreting 42 U.S.C. § 423(d)(2), other courts across the country have found that jobs that "are rare or generally unavailable to the claimant due to her limitations cannot be held to exist in significant numbers."  *Walker v. Mathews*, 546 F.2d 814, 820 (9th Cir. 1976); *Beltran v. Astrue*, 700 F.3d 386 (9th Cir. 2012) (finding that based on the rarity of the surveillance system monitor jobs (1,680 nationally-available jobs), and considering the claimant's physical and mental limitations, the Commissioner did not meet its burden of proving that significant jobs existed that plaintiff could perform).

Although relevant to this determination, the primary error here is not that there was only *one* job identified by the vocational expert, but whether the occupation identified was suitable in light of plaintiff's RFC, age and work experience.  Courts emphasize that "it is incumbent on the [Commissioner] at a minimum, to come forward with specific findings showing that claimant has the physical and mental capacity to perform specified jobs."  *Wilson v. Califano*, 617 F.2d 1050,

1053 (4th Cir. 1980) (quoting *Hall v. Sec'y. of Health, Ed. & Welfare*, 602 F.2d 1372, 1377 (9th

Cir. 1979); 20 C.F.R. § 416.966.[6]  Moreover, courts have found that the Commissioner failed to

satisfy the burden of providing evidence of a significant number of jobs in the national economy

that the claimant can perform when there was an apparent conflict about limitations in the

vocational expert testimony.  *Woodley v. Astrue*, 572 F. Supp. 2d 638, 651 (D.S.C. 2008); *Smith*

*ex rel. Smith v. Astrue*, CIV.A. 7:07CV314, 2008 WL 3887655 (W.D. Va. Aug. 21, 2008)

(explaining that in this case benefits were awarded when the Commissioner failed to met his

burden of demonstrating that there were jobs in significant numbers because "though the ALJ did

craft proper hypothetical questions to the VE, the testimony in response was equivocal"

particularly given his sleep apnea and resulting fatigue).

        Here, the magistrate judge finds that the job description of a production inspector grader

goes beyond the scope of plaintiff's RFC based on the functional and environmental limitations

described above.  Based on the foregoing analysis, the magistrate judge finds that plaintiff met

her initial burden of establishing disability and the Commissioner has not met her burden of

proving that plaintiff can perform work that existed in significant numbers in the national

economy and therefore the ALJ's finding as to this issue is not supported by substantial

evidence.

## VI.  REMEDY

        In light of these errors, plaintiff asks the court to reverse the Commissioner's decision

and award her disability benefits.  The government urges that if the court does not find that the

---

        [6] 20 C.F.R. § 416.966 further explains that "[work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy."

ALJ's decision is supported by substantial evidence and the law, the court should remand for further proceedings.

The decision of whether to reverse and remand for benefits or reverse and remand for a new hearing is one which "lies within the sound discretion of the district court." *Edwards v. Bowen*, 672 F. Supp. 230, 237 (E.D.N.C.1987); *see Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir.1971); 42 U.S.C. § 405(g).

As discussed above, the record developed by the ALJ demonstrates that plaintiff, with the limitations found by the ALJ, cannot perform even the one job the VE struggled to identify that supposedly met those limitations. The magistrate judge also sees no room for legitimate new and different analysis if the case were remanded. Further administrative proceedings would only further delay the appropriate determination and award of benefits. Therefore the magistrate judge recommends a reversal of the ALJ's decision and an award of disability benefits. *See Vitkek v. Finch*, 438 F.2d 1157 (4th Cir. 1971); *Decatur v. Astrue*, 1:11-cv-1256-AJT-TRJ (E.D. Va. 2013); *Windsor v. Astrue*, 1:10-cv-635-AJT-TCB (E.D. Va. 2010); *Smith ex rel. Smith v. Astrue*, CIV.A. 7:07CV314, 2008 WL 3887655 (W.D. Va. Aug. 21, 2008).

Moreover, reversal is further warranted here because plaintiff raised this specific error as a ground for reversal directly with the Appeals Council on September 17, 2012, and the Council failed to address and correct this error. R. at 254-58. Plaintiff's medical conditions are well-developed and documented in the extensive record which militates against the need for any additional adjudicatory proceedings.

## VII.  RECOMMENDATION

For these reasons, the undersigned recommends that plaintiff's Motion for Summary Judgment (No. 8) be GRANTED, and that defendant's Motion for Summary Judgment (No. 12)

be DENIED.  The magistrate judge recommends a remand to the Commissioner for a computation of appropriate benefits based on a disability commencing on June 15, 2008.

## VIII.  NOTICE

By means of the court's electronic filing system, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation.  A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.


                                             /s/
_____
                                    Thomas Rawles Jones, Jr.
                                    United States Magistrate Judge


February 13, 2015
Alexandria, Virginia